IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BENJAMIN BRYAN and SIMON ORTEGA,

Plaintiff,

v.

PATRICK MARIAKIS,

Defendant.

OPINION and ORDER

25-cv-43-jdp

---

Police officer Patrick Mariakis confronted plaintiffs Benjamin Bryan and Simon Ortega outside of a gas station in St. Croix Falls, Wisconsin, intending to cite Bryan for driving with an expired license. Bryan refused Mariakis's order to go to his car so they could talk. A physical struggle ensued and Mariakis ordered his police dog to bite Bryan. Ortega shouted curses at Mariakis; shortly thereafter, Mariakis threatened Ortega with the dog and then handcuffed him.

Bryan and Ortega bring claims against Mariakis under 42 U.S.C. § 1983. Bryan contends that Mariakis used excessive force against him in violation of the Fourth Amendment at three points during the encounter: when the dog first bit him, when the dog continued to bite him after he was subdued on the ground, and when the dog bit him a second time after he attempted to flee into the gas station store. Ortega contends that Mariakis unlawfully seized him in violation of the Fourth Amendment and retaliated against him for his protected speech, in violation of the First Amendment.

Mariakis moves for summary judgment on all of plaintiffs' claims. Dkt. 15. The court will grant the motion for Bryan's claims based on the initial dog bite and the second bite after Bryan tried to flee into the store. Mariakis is entitled to qualified immunity on these claims,

because it is not unlawful under clearly established law to use a police dog against a suspect who is resisting and attempting to flee. The court will deny the motion for summary judgment for Bryan's excessive force claim based on the dog continuing to bite him after he was subdued on the ground.

As for Ortega's claims, genuine disputes of fact preclude summary judgment for Mariakis on both the First Amendment retaliation and Fourth Amendment unlawful seizure claims. The court will deny Mariakis's motion for summary judgment for those claims.

## UNDISPUTED FACTS

The court draws the following facts from the parties' proposed findings of fact and from Mariakis's body camera footage. Dkt. 18-4. These facts are undisputed except where noted.

On the night of June 30, 2022, defendant Patrick Mariakis was working as a police officer for the City of St. Croix Falls police department, accompanied by his police dog, Ikar. Shortly after midnight, Mariakis observed a white pick-up truck heading eastbound. Mariakis thought the driver might be speeding; he tried to use his police radar to gauge the speed, but he was unsuccessful. Mariakis turned his vehicle around and caught up to the truck. He ran the license plate and learned that the car belonged to plaintiff Benjamin Bryan. He also learned that Bryan's driver license had expired two days earlier.

At this point, the truck pulled off into a Speedway gas station. Mariakis proceeded up the road a short distance and parked in a median, watching. The driver of the truck, Bryan, got out and pumped gas for a short time, then walked into the Speedway. The passenger, plaintiff Simon Ortega, got out and stood near the truck.

Mariakis drove up and parked behind the truck. He asked Ortega, "where's your buddy?" and Ortega said that he was in the store. Dkt. 18-4 (Mariakis body cam 0:15–0:30). Ortega confirmed that he was the passenger in the truck and asked Mariakis what they had done wrong. Mariakis told him that Bryan's license was expired. *Id.* at 0:45–1:15. Ortega then got a call from his wife and Mariakis let him answer it. Ortega told his wife that they were trying to get gas, but "apparently the cops are fucking with us . . . or messing with us." *Id.* at 1:45–2:00.

Mariakis left Ortega in the parking lot and went to the door of the Speedway, where he saw Bryan at the counter buying cigarettes. Mariakis opened the door, and Bryan said, "how's it going? Come in here if you want to talk." *Id.* at 2:18–2:20. Mariakis said, "no, we're going to go out there," and Bryan responded, "Why? I haven't done anything." *Id.* at 2:20–2:25. Mariakis told him not to make things difficult, and Bryan said, "I'm not making this difficult. You are making this difficult. I haven't done anything to you, and I haven't violated any rights. Tell me what I did." *Id.* at 2:25–2:40. Mariakis said that he would tell him outside.

Bryan completed his purchase and walked outside to where Mariakis was standing. Mariakis said, "we're going to go to your car," and Bryan refused, saying, "I don't need to go to my car. I want to smoke." *Id.* 3:00–3:05. Mariakis told him, "No, you're going to go in cuffs here in a second. Right now, this is a traffic stop." *Id.* at 3:06. Bryan said that it wasn't a traffic stop because he hadn't been stopped. He began walking past Mariakis, and Mariakis grabbed his shirt and pushed him against a trash can, telling him to stop moving. Bryan said, "don't touch me, I'm trying to roll a cigarette." *Id.* at 3:16. Mariakis radioed dispatch that he's "got one resisting."

3

A struggle ensued. Mariakis grabbed Bryan by the forearm and Bryan tried to pull away. At some point, Mariakis held onto his shirt and Bryan twisted, causing the shirt to come off. Mariakis said, "dude do you see my dog?," referring to Ikar, who was sitting in Mariakis's police vehicle. *Id.* at 3:25–30. Mariakis told Bryan that he was under arrest. Bryan attempted to move around Mariakis and into the store, saying "do not tase me." *Id.* at 3:40–45. Mariakis warned him that he was going to have Ikar bite him.

Mariakis called Ikar and Ikar ran over and bit Bryan on the forearm. Mariakis pushed Bryan toward the ground with his hands, yelling at him to get on the ground. *Id.* at 3:45–4:00. Ikar bit Bryan on the buttocks and held on. Bryan yelled, "Ow! Ow!," and "I'm bleeding." He asked for Ikar to stop.

At this point, Bryan was lying on the ground, Ikar still biting his buttocks. Bryan twisted into a sitting position, repeatedly asking Mariakis to make Ikar stop. (Mariakis testified that he believed Ikar was not actually biting Bryan, but only holding on to his shorts.) Dkt. 20 (Mariakis Dep. 146:11–14). Mariakis shouted at Bryan multiple times to put his hands behind his back and get on the ground, and eventually, Bryan laid down and twisted onto his stomach. Mariakis pulled Ikar off. Dkt. 18-4 (Mariakis body cam 6:00–6:05).

Mariakis waited for backup. Bryan asked him, "what did I do, was I speeding? Tell me what I did." Mariakis said, "I'm about to. I don't need to tell you right now." *Id.* at 6:45–6:53. Bryan yelled at Mariakis; Mariakis warned him to keep his hands behind his back and stay on the ground. Finally, Mariakis told Bryan that his license was expired and Bryan said, "it's expired?" and then, "that's bullshit." *Id.* at 8:03–8:11.

Ortega had been watching the above altercation from a distance, making comments, including the following:

- He called Mariakis a "dirty ass cop." *Id.* at 4:34.

- He said that Mariakis was using "gestapo tactics." *Id.* at 4:50.

- He said, "we're civil rights activists." *Id.* at 6:36.

- He said, "we're all fucking social justice warriors here dude . . . Officer Aryan! Officer Aryan!" *Id.* at 7:28.

- He called Mariakis a "weird ass fucking Nazi dude." *Id.* at 7:51.

- He said something to Mariakis that ended with "motherfucker." *Id.* at 8:13.

Several times, Mariakis warned Ortega to "stay right there," which Ortega did. *Id.* at 6:26; 6:50; 7:21; 8:04. Shortly after the "motherfucker" comment, Mariakis ordered Ortega to get down on the ground and then rushed toward Ortega with Ikar. *Id.* at 8:17–8:22. Ortega dropped to the ground.

As Mariakis moved toward Ortega, Bryan stood up. He walked toward Mariakis for a second and reached down to recover his discarded cigarettes. Mariakis yelled at him to get back on the ground. Bryan replied, "no, no" and backed up toward the convenience store door. He opened the door and went inside. Mariakis released Ikar again, yelling, "get him buddy, get him!" Ikar rushed into the store and bit Bryan on the forearm. Mariakis grabbed Bryan by the ponytail and pulled him back outside and onto the ground. *Id.* at 8:25–8:42. Bryan yelled at Mariakis to pull Ikar off and after about ten seconds, Mariakis did. *Id.* at 8:54. But Mariakis lost his balance, and Ikar lunged at Bryan again, biting him on the right forearm. *Id.* at 8:57. Mariakis pulled Ikar off. *Id.* at 9:03. Mariakis instructed Bryan to stay on the ground and radioed dispatch to send an ambulance.

A second officer arrived and Mariakis told him to handcuff Bryan and Ortega, which the officer did. *Id.* at 10:00–10:20. Mariakis put Ikar back into his police vehicle. Bryan was arrested, evaluated by paramedics at the scene, taken to the hospital, and then to jail. Ortega

was released after spending 18 minutes in handcuffs. The officers searched Bryan's vehicle and found a small amount of marijuana.

Bryan was charged with possession of THC, obstructing an officer, and resisting an officer. Polk County Case No. 22CF283. On April 16, 2024, Bryan pleaded no contest to the resisting and obstructing charges. Dkt. 17-6.

ANALYSIS

Plaintiffs assert claims under 42 U.S.C. § 1983, contending that Mariakis violated their rights under the First and Fourth Amendments to the United States Constitution. Bryan contends that Mariakis used excessive force against him in violation of the Fourth Amendment. Ortega contends that Mariakis retaliated against him for his protected speech, in violation of the First Amendment, and unlawfully seized him in violation of the Fourth Amendment. Mariakis moves for summary judgment on each of plaintiffs' claims and on plaintiffs' request for punitive damages.

On a motion for summary judgment, the question is whether there are any genuine factual disputes that could make a difference to the outcome of the case, or, stated another way, whether a reasonable jury could find for the nonmoving party, after drawing all reasonable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Loudermilk v. Best Pallet Co., LLC,* 636 F.3d 312, 314–15 (7th Cir. 2011); *Montgomery v. American Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010).

## A.  Bryan's excessive force claims

Bryan's excessive force claims are based on Mariakis's deployment of his police dog Ikar to "bite and hold" Bryan for the purpose of subduing him. Mariakis contends that Bryan's

excessive force claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because they necessarily imply the invalidity of Bryan's criminal convictions for resisting and obstructing an officer. Mariakis also contends that his use of force was reasonable and alternatively, that he is entitled to qualified immunity.

### 1. *Heck*

A person convicted of a crime cannot seek damages under federal law if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487. The *Heck* rule bars § 1983 suits that are really collateral attacks on a prior conviction. *Olivier v. City of Brandon, Mississippi*, 146 S. Ct. 916, 925 (2026). *Heck* does not automatically bar claims that are related to conduct that led to a conviction. *See id.* at 487 n.7. But if the plaintiff relies on a version of the facts for his civil suit that necessarily negates an element of his conviction, then *Heck* bars his suit. *Tolliver v. City of Chicago*, 820 F.3d 237, 244–46 (7th Cir. 2016) ("[a]s long as [the criminal] conviction stands, [the plaintiff] is confined [in his civil suit] to a version of the facts that does not undermine the conviction").

Bryan pleaded no-contest to one count of resisting an officer and one count of obstructing an officer, both violations of Wis. Stat. § 946.41(1), which states: "Except as provided in subs. (2m) and (2r), whoever knowingly resists or obstructs an officer while such officer is doing any act in an official capacity and with lawful authority is guilty of a Class A misdemeanor." Bryan's plea agreement did not identify the specific factual basis for his convictions; Bryan simply checked a box agreeing that he had committed each element of resisting and obstructing. Dkt. 17-10, at 3. The parties also don't explain in their briefs what specific conduct Bryan engaged in that amounted to resistance or obstruction. In his proposed

findings of fact, Bryan admitted that he physically resisted Mariakis at times during the struggle that preceded Ikar's first bite, but he disputed resisting Mariakis the entire time. Dkt. 34, ¶ 74.[1]

Convictions for resisting arrest are not generally irreconcilable with a contention that officers used excessive force. *Johnson v. Rogers*, 944 F.3d 966, 968 (7th Cir. 2019) ("The propositions 'the suspect resisted arrest' and 'the police used too much force to effect the arrest' can be true at the same time.") (citing *Evans v. Poskon*, 603 F.3d 362 (7th Cir. 2010), *Mordi v. Zeigler*, 870 F.3d 703 (7th Cir. 2017), and *Hill v. Murphy*, 785 F.3d 242 (7th Cir. 2015)). But if a plaintiff chooses to rest his excessive force claim on a contention that he did not resist or that the officer was not acting with lawful authority, then that claim would be barred. *See Okoro v. Callaghan*, 324 F.3d 488 (7th Cir. 2003) (plaintiff's claim could theoretically have been reconciled with his conviction, but it was barred because plaintiff "adhered steadfastly" to a position that was inconsistent with his conviction).

Relying on *Okoro*, Mariakis contends that Bryan's claims are barred because Bryan insists that he did not resist and that Mariakis lacked lawful authority to arrest him. Mariakis points to Bryan's deposition, in which Bryan said that he thought Mariakis might have been an imposter, Dkt. 21 (Bryan Dep. 75:13–76:3), that he believed Mariakis was not acting with lawful authority. *id.* at 52:17–21; 60:25; 61:21; 80:23, and that he did not resist. *id.* at 60:25–61:14. Mariakis is correct that these statements are inconsistent with Bryan's conviction, because an individual cannot be convicted of resisting arrest unless he knows that an officer was acting with lawful authority and that his conduct amounted to resistance. *State v. Young*, 2006 WI 98, ¶ 57, 294 Wis. 2d 1, 717 N.W.2d 729. But the deposition statements

---

[1] Both parties focus entirely on the resistance conviction for their *Heck* analysis. Neither party mentions the obstruction conviction.

simply reflect Bryan's subjective beliefs about what occurred; they don't reflect his legal position about the facts of this case. Bryan admits in his brief and proposed findings of fact that Mariakis had lawful authority and that he did resist somewhat, so his excessive force claims do not rely on contentions that are inconsistent with his convictions.

Mariakis also argues that Bryan's claims are barred because they rely on a contention that Mariakis violated Bryan's constitutional rights. Mariakis points to case law holding that an officer does not act with lawful authority under Wis. Stat. § 946.41(1) unless he complies with the constitution. Dkt. 16, at 3 (citing *State v. Ferguson*, 2009 WI 50, ¶ 7, 317 Wis. 2d 586, 767 N.W.2d 187). But an assertion that Mariakis violated Bryan's constitutional rights does not necessarily imply the invalidity of his conviction. There were multiple parts to Bryan's encounter with Mariakis. It could be true both that Mariakis acted with lawful authority during one part of the encounter and that Bryan resisted him, and that Mariakis violated Bryan's rights during another part of the encounter.

## 2. Reasonableness of the force

The basic question for an excessive force claim under the Fourth Amendment is whether the officer used "greater force than was reasonably necessary." *Snukis v. Taylor*, 145 F.4th 734, 741 (7th Cir. 2025). Courts assess the amount of force used from the perspective of a reasonable officer in light of the totality of the circumstances known to the officer, without regard to the officer's actual intent or his subjective beliefs. *Williams v. Indiana State Police Dep't*, 797 F.3d 468, 472–73 (7th Cir. 2015). In assessing reasonableness, courts balance the degree of force used against the government's interest in using force. Relevant factors include the severity of the crime, the seriousness and immediacy of any threat posed by the plaintiff, whether the plaintiff was resisting or evading arrest, whether the plaintiff was armed, and

whether the plaintiff was interfering or attempting to interfere with the officer's duties. *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). The court's goal is to determine "whether the force used to seize the suspect was excessive in relation to the danger he posed . . . if left unattended." *Dawson*, 803 F.3d at 833 (citing *Padula v. Leimbach,* 656 F.3d 595, 602 (7th Cir. 2011)).

Qualified immunity shields government officials who make good-faith mistakes in the performance of their duties. Qualified immunity protects government officials from individual liability under 42 U.S.C. § 1983 unless the unlawfulness of the official's conduct was clearly established at the time of the violation. *Bradley v. Vill. Of Univ. Park, Illinois*, 59 F.4th 887, 904 (7th Cir. 2023) (citing *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018)). For the unlawfulness of a defendant's conduct to be clearly established, a reasonable officer in the defendant's shoes would need to understand that he was violating the plaintiff's right. *Doxtator v. O'Brien*, 39 F.4th 852, 863 (7th Cir. 2022). The use of excessive force is an area of the law "in which the result depends very much on the facts of each case," so police officers are entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue. *Kisela v. Hughes*, 584 U.S. 100, 104 (2018). "This sounds like a high bar because it is—qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Doxtator*, 39 F.4th at 863 (citation and quotation marks omitted).

Bryan contends that Mariakis used excessive force when he ordered Ikar to "bite and hold" Bryan in an effort to subdue him. The Seventh Circuit has held that the use of a police dog "bite and hold" technique is "at the higher end of the spectrum" of force, because of its potential to inflict serious bodily harm. *Becker v. Elfreich*, 821 F.3d 920, 926 (7th Cir. 2016). When significant force is used, the justification for the force must be correspondingly stronger.

10

It is clearly established that officers may not use significant force solely to gain compliance from a suspect, if the non-compliance does not pose a risk to officers or others on the scene. *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 524–25 (7th Cir. 2012); *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 863 (7th Cir. 2010).

Bryan says that Mariakis used excessive force at three points during their encounter: (1) when he first deployed Ikar against Bryan; (2) when he allowed Ikar to continue biting Bryan for more than two minutes; and (3) when he deployed Ikar a second time after Bryan stood up and tried to go into the store. Mariakis contends that each use of force was reasonable; alternatively, he contends that he is entitled to qualified immunity.

### a.  First deployment of Ikar

Mariakis first deployed Ikar after Bryan refused Mariakis's order to go his car so that they could talk, which led to a physical struggle between Mariakis and Bryan. Mariakis contends that Bryan actively resisted him during the physical struggle, which made the use of significant force reasonable. Mariakis relies principally on a line of Seventh Circuit cases holding that it is generally reasonable to use significant force against a suspect who is actively resisting. *See Snukis v. Taylor*, 145 F.4th 734 (7th Cir. 2025) (suspect tased after refusing to put his hands up, struggling to break free when an officer grabbed his arm, then striking another officer); *Brooks v. City of Aurora, Ill.*, 653 F.3d 478 (7th Cir. 2011) (suspect pepper sprayed after backpedaling toward his house while swatting officer's hands away); *Forrest v. Prine*, 620 F.3d 739 (7th Cir. 2010) (suspect in a holding cell tased after pacing in a threatening manner, yelling obscenities, and declining to comply with strip search commands); *see also Dockery v. Blackburn*, 911 F.3d 458, 467 (7th Cir. 2018) (collecting cases). Mariakis says that Bryan acted similarly to the suspects in these cases: he walked away after Mariakis told him that this was a

11

traffic stop; he refused to follow Mariakis's orders; he used a threatening tone; and he tried to pull away and evade Mariakis after Mariakis put hands on him.

The problem is that Mariakis's characterization of Bryan's behavior is disputed. If a reasonable jury viewed the facts in Bryan's favor, then the circumstances would not justify the use of significant force. Bryan was stopped because his license had expired two days previously, which is only a minor traffic violation. A reasonable jury could find that Bryan behaved calmly, not aggressively, despite being suddenly confronted by an officer who gave him no indication of what he may have done wrong. Mariakis points out that Bryan refused to go with him to his car and told Mariakis, "this is not a traffic stop because I'm not being stopped." Dkt. 18-4 (Mariakis body cam 3:10–3:13). But a reasonable jury could interpret that response as confusion, not aggression; after all, it was true that Bryan hadn't been pulled over. Bryan admits that he resisted somewhat after Mariakis pushed him against a trash can and grabbed his forearm, but Bryan testified that he did so only because he was "trying not to get hurt," *Id.* at 61:11–14, and the bodycam footage supports a finding that Bryan was only trying to pull away from Mariakis to prevent his arm from being twisted. A reasonable jury could find that Bryan's resistance was purely defensive, which could support an inference that Bryan did not pose an objective threat justifying a significant use of force.

Nevertheless, the court need not decide whether Mariakis's actions were reasonable, because Mariakis is entitled to summary judgment on qualified immunity grounds. As the court has explained, it is clearly established in the Seventh Circuit that officers may not use significant force solely to gain compliance from a suspect who is not resisting or is only passively resisting. *Dockery*, 911 F.3d at 467. But even viewed in his favor, Bryan's actions cannot be classified as passive resistance. Bryan admits that he pulled away from Mariakis and then tried

to evade him and escape back into the store. Dkt. 35, ¶¶ 61, 75, 77. Those actions may have been defensive, but they were not passive. *See Dockery*, 911 F.3d at 967 (noting that "swatting an officer's hands away while backpedaling" is active resistance).

The analysis is complicated somewhat because Mariakis appears to have provoked Bryan to resist by suddenly grabbing him. The Seventh Circuit has held that when an officer assaults someone, the person's attempt to free himself does not create probable cause for disorderly conduct or resisting arrest. *Rooni v. Biser*, 742 F.3d 737, 741–42 (7th Cir. 2014). But in *Rooni*, the court found it dispositive that the officer lacked a justifiable reason to assault the plaintiff. *Id.* Bryan does not contend that Mariakis lacked justification to put hands on him, nor could he, because that would call into question the validity of his conviction for resisting and run afoul of *Heck*. Mariakis almost certainly could have done a better job deescalating, but that doesn't change the excessive force analysis. Officers are generally entitled to escalate the use of force in response to a suspect's behavior, even if they've made the situation worse with their own actions. *Est. of Biegert by Biegert v. Molitor*, 968 F.3d 693, 698 (7th Cir. 2020).

Bryan argues that *Becker* plainly bars Mariakis's actions, but that case is not instructive on the issue of Mariakis's initial deployment of Ikar. In *Becker*, an officer released his police dog into a home to subdue a suspect that he believed was hiding from law enforcement. The officer found the suspect with his hands on his head attempting to surrender, but he nevertheless allowed the dog to continue biting for several minutes. The court held that the continuation of the bite after the suspect surrendered was unconstitutional, because the suspect was not actively resisting. *Id.* at 927. But the court did not consider whether the original release of the

police dog was reasonable, so *Becker* provides no guidance on the constitutionality of Mariakis's initial deployment of Ikar.

Bryan also points to *Alicea v. Thomas*, 815 F.3d 283 (7th Cir. 2016) and *Davis v. Allen,* No. 21-cv-565, 2023 WL 2914807 (W.D. Wis. Apr. 12, 2023), but those cases are not instructive either. The facts of *Davis* are essentially the same as *Becker*: the police released a dog into a home to search for and detain a suspect. This court found that the initial deployment of the dog was reasonable, but the continuation of the bite was not. 2023 WL 2914807, at *5. As for *Alicea*, the plaintiff in that case asserted that he was standing still with his arms raised in surrender when a police officer ordered his dog to bite him. 815 F.3d at 289–90. That's a far cry from this case, where the bodycam footage shows that Bryan and Mariakis were still engaged in a physical struggle when Mariakis ordered Ikar to bite Bryan. Dkt. 18-4 (Mariakis bodycam 3:42–3:45).

Bryan has not identified any precedent that would have put beyond debate that Mariakis was not allowed deploy Ikar to subdue Bryan. Accordingly, Mariakis is entitled to summary judgment on the basis of qualified immunity.

### b. Continued biting

Bryan next contends that Mariakis violated his rights by allowing Ikar to continue biting him for more than two minutes after he was subdued on the ground. Mariakis argues that this was reasonable for two reasons. First, he says that Bryan was still resisting. Second, he says that Mariakis didn't believe that Ikar was biting Bryan for much of this time; he thought Ikar was only biting Bryan's shorts.

Genuine disputes of fact preclude summary judgment for Mariakis on this claim. Mariakis concedes that under clearly established law, he could not allow Ikar to continue biting

14

if Bryan was not acting aggressively or actively resisting. *Becker*, 821 F.3d at 927. Mariakis contends that Bryan *was* actively resisting, pointing to the bodycam footage, which shows Bryan yelling, not following commands to stay on the ground and roll over, and attempting to sit up. But the footage is subject to competing interpretations. A reasonable jury could find that Bryan was largely compliant, and that his shouting and movement was not resistance, but a pain response to Ikar biting him. *See* Dkt. 35, ¶ 149. Mariakis also points to a moment in which Bryan, while laying on his stomach with Ikar biting his buttocks, threw cigarette paraphernalia toward Ortega and yelled at Ortega to roll him a cigarette. Dkt. 18-4 (Mariakis bodycam 5:40–5:43). Mariakis argues that this was "odd behavior." Dkt. 10, at 16. The court agrees, but a reasonable jury could find that it was not aggressive or resistant behavior.

Mariakis also argues that summary judgment is warranted because Mariakis believed Ikar was only biting Bryan's shorts. But a reasonable jury wouldn't have to believe Mariakis's testimony. There is ample evidence from the bodycam footage that Ikar was still biting Bryan, including that Bryan was arching his back and continued to say that he was in pain, so a reasonable jury could infer that Mariakis knew that. In any event, Mariakis's argument assumes that it would not be excessive force for an officer to allow his police dog to bite a suspect on the shorts, but Mariakis cites no authority for that proposition.

In sum, a reasonable jury could credit Bryan's position that Mariakis allowed Ikar to continue biting Bryan for more than two minutes while he was subdued on the ground and not actively resisting. That would violate clearly established law under *Becker*, so Mariakis is not entitled to summary judgment on this claim.

### c. Second deployment of Ikar

Bryan next challenges Mariakis's second deployment of Ikar, which occurred approximately eight minutes into the encounter, when Bryan stood up from the ground and attempted to go into the store. Mariakis ordered Ikar to "get him" and Ikar ran into the store and bit Bryan on the arm. Ikar continued to bite Bryan while Mariakis pulled him out of the store and pushed him back onto the ground. At that point, Mariakis pulled Ikar off Bryan, but then Mariakis lost his footing and Ikar lunged and bit Bryan again.

The court concludes that Mariakis is protected by qualified immunity for his decision to deploy Ikar a second time. It is undisputed that Bryan stood up against Mariakis's orders and began attempting to flee into the store. Bryan testified that he was afraid of Ikar and was trying to get to safety. Dkt. 21 (Bryan Dep. 78:4–10). But courts have found the use of significant force, including dog bites, reasonable when a suspect has attempted to flee. *See, e.g., Johnson v. Scott*, 576 F.3d 658, 660–61 (7th Cir. 2009). The reasonableness here is a slightly closer question given that Bryan tried to flee into a store, which is a contained space that would have prevented Bryan from fleeing any further. But Bryan doesn't identify any clearly established law that would have put the issue beyond debate.

Bryan also contends that Mariakis acted unreasonably by allowing Ikar to continue to bite once Bryan was back on the ground, and by allowing Ikar to bite Bryan again after Mariakis pulled him off. These arguments are not well-developed, and the court does not find them persuasive. It is undisputed that Mariakis pulled Ikar off only about ten seconds after he got Bryan back onto the ground, and Bryan doesn't say why that amount of time was unreasonably long. As for the second bite, it is undisputed that Mariakis did not order Ikar to bite; Ikar lunged and bit Bryan after Mariakis lost his footing and accidentally let go of Ikar. In his brief,

Bryan does not contend that Mariakis failed to adequately train Ikar or made any other intentional decision that caused Ikar to bite here. A use of force that is entirely accidental does not violate the Fourth Amendment. *See Donovan v. City of Milwaukee*, 17 F.3d 944, 948 (7th Cir. 1994). The court will grant summary judgment to Mariakis on Bryan's claims based on the second deployment of Ikar.

### B. Ortega's retaliation claims

Ortega asserts claims for First Amendment retaliation, contending that Mariakis threatened him with Ikar and handcuffed him in retaliation for his protected speech. A retaliation claim has three elements: (1) the individual engaged in constitutionally protected speech; (2) he suffered an adverse action likely to deter such speech; and (3) his protected speech was at least a motivating factor for the adverse action. *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014). Mariakis challenges all three elements on summary judgment. The court concludes that the First Amendment claims will have to be resolved at trial.

As for the first element, Ortega engaged in protected speech multiple times during Mariakis's encounter with Bryan, including when he called Mariakis a "dirty ass cop," "Officer Aryan," a "weird ass fucking Nazi," and something that ended in "motherfucker." *City of Houston, Tex. v. Hill*, 482 U.S. 451, 461–62 (1987) (First Amendment protects most verbal criticism toward police officers); *Payne v. Pauley*, 337 F.3d 767, 776 (7th Cir. 2003) ("the First Amendment protects even profanity-laden speech directed at police officers"). Mariakis argues that these comments were unprotected "fighting words" because they would incite the average person to respond aggressively. Dkt. 16, at 15–16 (citing *Chaplinksky v. State of New Hampshire*, 316 U.S. 568 (1942)). But as the Supreme Court noted in *Hill*, "a properly trained officer may reasonably be expected to 'exercise a higher degree of restraint' than the average citizen, and

17

thus be less likely to respond belligerently to 'fighting words.'" 482 U.S. at 462 (quoting *Lewis v. City of New Orleans*, 415 U.S. 130, 135 (1974) (J. Powell, concurring)). Courts have routinely found language like Ortega's to be protected when directed at police officers. *See, e.g., Wood v. Eubanks*, 25 F.4th 414 (6th Cir. 2022) (plaintiff called the officers "fucking thugs with badges" and "motherfuckers"); *Thurairajah v. City of Fort Smith, Arkansas*, 925 F.3d 979 (8th Cir. 2019) (plaintiff yelled, "fuck you!" at officers). Nothing about the circumstances here puts Ortega's speech outside the bounds of First Amendment protection: Ortega did not encourage any violence against Mariakis, he did not urge Bryan not to comply, and there was no crowd of people around whom Ortega could have incited.

As for the second element, Ortega says that Mariakis retaliated against him for his speech in two ways: first, he rushed toward him with Ikar; and second, he ordered Ortega to be handcuffed. Mariakis doesn't address the handcuffing in his briefs, so he has forfeited any argument that that was not an adverse action. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). As for the use of Ikar, Mariakis says that all he did was "show Ikar" to Ortega, which he argues wouldn't deter a person of ordinary firmness from engaging in First Amendment activity. But a reasonable jury could disagree with Mariakis's mild characterization of his actions. The bodycam footage shows that Mariakis suddenly ran toward Ortega with Ikar, allowing the dog to get within a couple of feet of him. Dkt. 18-4 (Mariakis bodycam 8:18–8:22). A reasonable jury could infer that Mariakis was threatening to have Ikar bite Ortega. That's akin to threatening someone with a dangerous weapon, which is plainly an action likely to deter speech. *See MacIntosh v. Clous*, 69 F.4th 309, 319–20 (6th Cir. 2023) (display of firearm was adverse action).

As for the third element, Mariakis says that he didn't hear Ortega's protected speech, and that his actions toward Ortega were intended to control the situation, not to retaliate against Ortega for his speech. But genuine disputes preclude summary judgment on the causation issue too. Mariakis's bodycam picked up Ortega calling Mariakis a "motherfucker" only seconds before Mariakis rushed toward him with Ikar, so it's reasonable to infer that Mariakis heard that. Dkt. 18-4 (Mariakis bodycam 8:13). A reasonable jury can infer retaliation from an adverse action that follows so closely on the heels of protected speech. *See Culver v. Gorman & Co.*, 416 F.3d 540, 546 (7th Cir. 2005). A reasonable jury could also doubt Mariakis's explanation for his actions. Ortega had been watching the altercation between Mariakis and Bryan for more than five minutes at this point. There was nothing appreciably different about his behavior in the moments before Mariakis rushed toward him with Ikar, so a jury could disbelieve that Mariakis did so because he believed he needed to control the situation.

Mariakis is also not protected by qualified immunity from Ortega's First Amendment claim. Mariakis's qualified immunity argument rests on an assertion that there is no clearly established law putting beyond debate that Ortega's comments were protected. But *Hill*, *Lewis*, and *Payne* clearly establish that Ortega's speech was protected.

## C. Ortega's unlawful seizure claims

A person is seized under the Fourth Amendment when an officer restrains the person's freedom of movement by means of intentional force or other show of authority. *Hawkins v. Mitchell*, 756 F.3d 983, 992 (7th Cir. 2014). Generally, seizures are reasonable only when they are based on probable cause. *United States v. Eymann*, 962 F.3d 273, 282 (7th Cir. 2020). But an officer may briefly detain someone for investigatory purposes if the detention is supported

by the less stringent standard of reasonable suspicion. *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968). If an investigatory stop continues for too long or becomes unreasonably intrusive, including through a disproportionate use of force, then it can turn into a de facto arrest, which must be based on probable cause. *United States v. Bullock*, 632 F.3d 1004, 1015 (7th Cir. 2011); *United States v. Olson*, 41 F.4th 792, 799 (7th Cir. 2022).

Ortega contends that Mariakis violated the Fourth Amendment in two ways: first, he had no reasonable justification to stop Ortega in the first place; and second, he handcuffed Ortega, which unreasonably escalated the stop to an arrest without probable cause. Ortega's first contention is based on the short interaction between Mariakis and Ortega before Mariakis went to look for Bryan inside the gas station store. Mariakis approached Ortega, asked, "where's your buddy?" and told him, "we're going to go have a chat over there." Then he requested Ortega's identification and asked Ortega several questions about where he and Bryan had been and where they were going. After about two minutes, Mariakis walked away from Ortega to go find Bryan.

It's not clear whether this initial interaction between Ortega and Mariakis qualifies as a seizure at all. Mariakis told Ortega, "we're going to go have a chat over there," which could be a show of authority to restrain Ortega's freedom. But Ortega didn't actually move anywhere, and Mariakis ended up walking away to find Bryan without insisting that Ortega accompany him. In any event, the court need not resolve the issue whether this was a seizure. In his briefs, Mariakis appears to assume that he did seize Ortega here, so the court will make the same assumption.

Mariakis's only argument in support of summary judgment is that officers may lawfully seize passengers during traffic stops. Mariakis cites *Maryland v. Wilson*, in which the Supreme

20

Court held that officers conducting a lawful traffic stop may order passengers to exit the vehicle for the duration of the traffic stop. 519 U.S. 408, 413–15 (1997). But the reasoning of *Wilson* doesn't apply here. The Supreme Court reasoned in that case that "as a practical matter, the passengers are already stopped by virtue of the stop of the vehicle;" thus, any intrusion that results from being asked to exit the vehicle is minimal and justified by concerns for officer safety. *Id.* at 413–14. Here, although Mariakis characterizes his encounter with Bryan and Ortega as a traffic stop, he did not actually stop their vehicle. He could have approached Bryan directly without ever approaching Ortega. The court cannot conclude that the stop is justified under *Wilson*.

Ortega also contends that Mariakis violated the Fourth Amendment when he ordered Ortega to be handcuffed and then kept him handcuffed for 18 minutes before releasing him. Handcuffing is a measure of force traditionally associated with arrest, so it is generally reasonable only if an officer has probable cause. *United States v. Bullock*, 632 F.3d 1004, 1016 (7th Cir. 2011). But the Seventh Circuit has recognized that in rare circumstances, handcuffing short of arrest may be reasonably necessary to ensure officer safety. *Id.*, *United States v. Smith*, 3 F.3d 1088, 1094 (7th Cir. 1993). Mariakis contends that this was one of those rare circumstances. Alternatively, he contends that the handcuffing was reasonable because he had probable cause to arrest.

The court of appeals has held handcuffing short of arrest to be reasonable in a variety of circumstances involving a heightened safety risk, including when an officer suspected the person of a bank robbery, *United States v. Smith*, 697 F.3d 625 (7th Cir. 2012), when the person was carrying weapons, *Rabin v. Flynn*, 725 F.3d 628 (7th Cir. 2013); *United States v. Glenna*, 878 F.2d 967 (7th Cir. 1989), when the person had recently been seen with a known gang

member, *Matz v. Klotka*, 769 F.3d 517 (7th Cir. 2014), and when the person had a criminal history of drug possession and stated that he was in town to visit someone who was suspected of being a drug dealer. *United States v. Pace*, 48 F.4th 741, 751 (7th Cir. 2022). Mariakis argues that the circumstances here posed a similarly heightened risk, because it was late at night, Mariakis was the only officer on the scene, and Mariakis had just been involved in a physical altercation with Bryan, who was Ortega's companion.

The court concludes that handcuffing Ortega was not reasonably necessary under the circumstances to protect officer safety. This case is nothing like *Smith*, *Rabin*, *Glenna*, *Matz*, or *Pace.* Mariakis was not the only officer on the scene, because backup arrived immediately before Ortega was handcuffed. Mariakis had no reason to suspect Ortega of a crime or to assume that he had any weapons. Mariakis points out that Ortega yelled at him and that Ortega was connected to Bryan. But the altercation with Bryan had been going on for almost eight minutes by the time Ortega was handcuffed, and during that time, Ortega had been entirely compliant with Mariakis's commands to stay where he was and to get down on the ground. Mariakis had no reason to suspect from Ortega's behavior that Ortega posed a risk to him or anyone else on the scene. *See Mwangangi v. Nielsen*, 48 F.4th 816, 827 (7th Cir. 2022) (handcuffing compliant, unarmed individual not justified by officer safety concerns).

Mariakis also contends that the handcuffing was reasonable because he had probable cause to arrest Ortega. In his original brief, Mariakis argued that he had probable cause for marijuana possession, because he smelled marijuana when he first walked past Bryan's vehicle. Dkt. 20 (Mariakis Dep. 63:18–64:3). But in response to plaintiffs' proposed findings of fact, Mariakis concedes that whether he smelled marijuana is disputed, because Bryan testified that there were several bins of grain in his truck that would have drowned out the smell of

22

marijuana. Dkt. 21 (Bryan Dep. 82:21–84:22). Whether Mariakis had probable cause for marijuana possession will have to be resolved at trial.

Mariakis also says that he had probable cause for disorderly conduct and obstructing an officer, based on Ortega's yelling at him during his encounter with Bryan. But speech can constitute disorderly conduct only if it is unprotected by the First Amendment. *Oetzman v. Dodge Cnty., Wisconsin*, No. 24-cv-94-jdp, 2025 WL 3022571, at *3 (W.D. Wis. Oct. 29, 2025). Likewise, an officer can't arrest someone for obstruction just because the person said things that annoyed the officer. *Clark v. Rock Cnty., Wisconsin*, No. 22-cv-121-jdp, 2023 WL 4623511, at *5 (W.D. Wis. July 19, 2023) (citing *Hill*, 482 U.S. at 461). The court has already determined that Ortega's speech was protected. That precludes any finding that Mariakis had probable cause for disorderly conduct or obstruction.

That leaves the question whether Mariakis is entitled to qualified immunity on Ortega's Fourth Amendment claims. Ortega would be entitled to qualified immunity if a reasonable officer in his position could have believed either that officer safety justified handcuffing Ortega, or that probable cause existed. *Doxtator v. O'Brien*, 39 F.4th 852, 863 (7th Cir. 2022) (qualified immunity standard for use of force); *Fleming v. Livingston Cnty., Ill.*, 674 F.3d 874, 879–80 (7th Cir. 2012) (qualified immunity standard for "arguable probable cause"). But as the court has explained, Ortega was not handcuffed until almost ten minutes into the police encounter, and he did nothing more than shout at Mariakis during that time. No reasonable officer under the circumstances could have concluded that Ortega was a safety risk or that there was probable cause to arrest him. Mariakis is not entitled to qualified immunity.

23

### D. Punitive damages

Punitive damages are available in § 1983 cases upon showing of "evil motive or intent, or . . . reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Mariakis contends that plaintiffs cannot meet this standard for any of their claims.

Most of Mariakis's punitive damages arguments rely on disputed facts or rehash his arguments on the merits of plaintiffs' claims. For example, Mariakis says that he did not act recklessly or maliciously toward Bryan because he gradually escalated his use of force in response to Bryan's non-compliance. But the court has determined that Mariakis's description of his physical altercation with Bryan is disputed. Similarly, Mariakis says that he didn't act recklessly or maliciously toward Ortega because he "has an ability to control the scene" and because he "had probable cause to arrest Ortega." Dkt. 16, at 26. The court rejected both those arguments in its discussion of the merits of Ortega's claims.

Two of Mariakis's arguments merit further discussion. First, Mariakis says that Bryan cannot meet the standard for punitive damages because (1) Mariakis warned him twice before deploying Ikar, and (2) Mariakis called an ambulance for him after the event. Those facts are relevant to the jury's determination of the punitive damages issue, but they are not dispositive. And there are facts that cut the other way, including the length of time that Mariakis allowed Ikar to bite Bryan and Mariakis's disregard of Bryan's complaints that he was in pain and requests for Mariakis to remove Ikar. A reasonable jury could find in Bryan's favor, so the court cannot grant summary judgment to Mariakis on the punitive damages issue.

Second, Mariakis says that Ortega cannot meet the standard for punitive damage because he didn't physically hurt Ortega. Mariakis cites no authority for the proposition that

24

punitive damages are not available for constitutional violations that don't result in physical injury and that proposition is directly contradicted by circuit precedent. *See, e.g., Crawford v. Garnier*, 719 F.2d 1317, 1325 (7th Cir. 1983) (upholding punitive damages award in a case involving termination of employment in retaliation for protected speech).

The court will deny the motion for summary judgment on the punitive damages issue.

ORDER

IT IS ORDERED that:

1. Defendant Patrick Mariakis's motion for summary judgment, Dkt. 15, is GRANTED in part and DENIED in part. Defendant's summary judgment motion is granted on the following claims and issues:

    a. Mariakis used excessive force on Bryan when he initially deployed Ikar, in violation of the Fourth Amendment.

    b. Mariakis used excessive force on Bryan when he deployed Ikar a second time, in violation of the Fourth Amendment.

2. Defendant's summary judgment motion is denied on the following claims and issues:

    a. Mariakis used excessive force on Bryan when he allowed Ikar to continue biting him for more than two minutes, in violation of the Fourth Amendment.

    b. Mariakis retaliated against Ortega for his protected speech when he rushed toward him with Ikar and when he handcuffed him, in violation of the First Amendment.

    c. Mariakis unlawfully seized Ortega when he approached him at the beginning of the stop and when he handcuffed him, in violation of the Fourth Amendment.

25

       d.  Punitive damages on all claims.

Entered April 20, 2026.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge